**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAMESON ROSADO, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 15-3999 (ES) (JAD) |
| | : | |
| v. | : | OPINION |
| | : | |
| JEFFERSON B. SESSIONS, | : | |
| ATTORNEY GENERAL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**SALAS, DISTRICT JUDGE**

Pending before the Court is Defendant Jefferson B. Sessions's motion to dismiss *pro se* Plaintiff Jameson Rosado's Fourth Amended Complaint (D.E. No. 58 ("FAC")) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. No. 66). The Court has considered the parties' submissions in support of and in opposition to Defendant's motion and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b). For the following reasons, the Court grants-in-part and denies-in-part Defendant's motion.

## I. Background

The Court writes primarily for the parties and assumes their familiarity with the facts and procedural history of this case.[1] The following is a brief recitation of the factual background. Other relevant facts are noted in the Discussion section below.

---

[1] The procedural history is set forth in detail in Magistrate Judge Dickson's April 16, 2018 Letter Order. (D.E. No. 80).

***Employment History.***  Rosado was employed by the FBI from April 5, 1992 until February 12, 2012.  (FAC ¶ 1).  About five months before his termination, Rosado was physically removed from the Newark FBI office.  (*Id.*).

From April 1992 until October 2008, Rosado worked in the FBI Newark Division's Operations Center.  (*Id.* ¶ B4).  Rosado served as the supervisor of the Operations Center from May 2005 until October 2008.  (*Id.* ¶ 6).  On October 30, 2008 (the day before his wedding), he was demoted.  (*Id.* ¶ 5).  Rosado says the FBI should have delayed his demotion until after his wedding and honeymoon.  (*Id.* ¶ 17).

***August 2007 Inspection.***  During a 2007 inspection of the Newark Office, Rosado divulged "that the Administrative Branch was misappropriating the overtime budget, primarily Administrative Officer (AO) Dorisse Shakir Ullah, and Assistant Special Agent in Charge (ASAC) Dave Velazquez."  (*Id.* ¶ 7).  Rosado alleges that the person to whom he divulged this "was also an AO from another field office" who "disclosed [his] allegations, to the Newark AO, which served as the catalyst for retaliation."  (*Id.* ¶ 8).  Rosado notes that he received his first Performance Improvement Plan ("PIP") after the 2007 inspection of the Newark office.  (*Id.* ¶ 24).

***EEO Activity.***  In November 2008, Rosado filed an Equal Employment Opportunity ("EEO") complaint that alleged retaliation, harassment, and reprisal stemming from the August 2007 inspection.  (*Id.* ¶ 2).  He received an EEO hearing in June 2012.  (*Id.* ¶ 22).  Special Agent in Charge ("SAC") Michael Ward became a supervisor after the August 2007 inspection, and Rosado alleges that SAC Ward retaliated against him, improperly attempted to discuss performance issues with him, and improperly asked him to surrender personally owned firearms, among other things.  (*Id.* ¶¶ 19-21).

***Work Performance.*** Rosado alleges that FBI management conspired "to downplay or lower [his] performance ratings, so as to escalate terminating [his] employment." (*Id.* at 4).[2] In particular, he alleges that Assistant Special Agent in Charge ("ASAC") Michael Schulstad asked Supervisory Intelligence Analyst Michael Pohl to downgrade Rosado's performance, but Pohl refused to do so. (*Id.*). According to Rosado, Pohl stated that Schulstad wanted to "temporarily" assign Rosado to Pohl because Pohl "had previous success in placing an employee on a performance plan." (*Id.* ¶ 23). Rosado alleges that his transfer to Pohl's unit (discussed in more detail below) "indicates that management was a) laying the groundwork for b) Pohl to supervise [Rosado], c) embellish or create performance issues, d) to justify a PIP, e) which would have resulted in [Rosado's] escalated termination." (*Id.*).

Rosado challenges the FBI's contentions about his work performance. For example, he points to a 2007 form SF-50 (Notification of Personnel Action), attached as an exhibit to a prior filing, which he alleges reflects that his work performance was "at an acceptable level of competence." (*Id.* ¶ 10) (citing D.E. No. 21, Ex. 3). He also states that he never received a promotion to GS-10, despite having served for three years in a management position. (*Id.* ¶ 12).

***Denial of Requested Transfer.*** In 2008, Rosado sought a transfer to the Newark Division's Gang Unit (i.e., the Squad CE-1 Unit). (*Id.* at 2-3). Rosado alleges that the FBI's failure to effect this transfer stems from his disclosure of misappropriation during the August 2007 inspection. (*Id.*).

As noted above, Rosado was transferred to Pohl's Unit (and not the Gang Unit) sometime in 2009, where he worked from 2009 to 2012. (*See id.* ¶¶ 23-24). Rosado alleges that "work was minimal" during this time, and he "was merely given a desk to sit at." (*Id.* ¶ 24). He also alleges

---

[2] Rosado's FAC contains several non-numbered paragraphs. The Court will refer to these paragraphs by the page numbers printed at the bottom of each page.

that "[p]arties harassed [him] about doing menial work, with at least one Intelligence Analyst stating she had a 'mindless task' that needed to be done and thought of [Rosado]." (*Id.*).

## II.     Legal Standard

### A.     Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A party bringing a motion under Rule 12(b)(1) may assert either a "facial or factual challenge to the court's subject matter jurisdiction." *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

In a facial attack, the moving party "challenges subject matter jurisdiction without disputing the facts alleged in the complaint," and the Court must "consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). In a factual attack, the moving party "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or otherwise presenting competing facts. *Id.* (citation, internal quotation marks, and alteration omitted). In this scenario, the Court may weigh and consider evidence outside the pleadings. *Id.*

### B.  Rule 12(b)(6)

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citation omitted). But the court is not required to accept legal conclusions as true. *See Iqbal*, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.    Discussion

### A.    Defamation and Invasion-of-Privacy Claims[3]

#### 1.    Law

"The United States, as a sovereign, is immune from suit unless it consents to be sued." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012) (citations and internal quotation marks omitted). The Federal Tort Claims Act ("FTCA") "operates as a limited waiver of the United States's sovereign immunity." *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (citation omitted). "If the United States is sued in tort, . . . the FTCA provides the exclusive avenue to relief, if any can be had." *Vanderklok v. United States*, 868 F.3d 189, 201 (3d Cir. 2017) (citation omitted).

---

[3]    The Court notes that the proper defendant for any tort claim in this context is the United States, not a federal agency or agency head. *CAN v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008). Here, Rosado's Fourth Amended Complaint names only Attorney General Jefferson B. Sessions. Nevertheless, the Court will proceed with its analysis because even if Rosado substituted the United States as a defendant for his intentional-tort claims, the Court would still lack subject-matter jurisdiction over the claims.

But there is an "extensive list of exceptions which limits the waiver of sovereign immunity, and accordingly, limits a court's subject matter jurisdiction under the FTCA." *Brunwasser v. United States*, No. 07-0385, 2008 WL 728546, at *5 (W.D. Pa. Mar. 17, 2008) (citing 28 U.S.C. § 2680). In particular, the exceptions "include a disclaimer of liability for the United States for '[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'" *Vanderklok*, 868 F.3d at 202 (quoting 28 U.S.C. § 2680(h)). This is generally "known as the intentional tort exception." *Id.* (citation and internal quotation marks omitted). If a claim "fall[s] within that exception to the waiver of immunity," then a plaintiff "is out of luck under the FTCA." *Id.*; *see also McCluskey v. United States*, No. 10-0694, 2010 WL 4024717, at *8 (W.D. Pa. Oct. 12, 2010) ("If a plaintiff's claim falls within one of these 'exceptions,' the United States retains its immunity from suit with respect to this claim and a court is again without subject matter jurisdiction.") (citation omitted). As here, the United States can move to dismiss an FTCA claim based on the intentional-tort exception under Federal Rule of Civil Procedure 12(b)(1). *See, e.g., Logan v. United States*, No. 11-7235, 2012 WL 2979041, at *1-3 (D.N.J. July 20, 2012); *McCluskey*, 2010 WL 4024717, at *8-9.

### 2. Analysis

In his Fourth Amended Complaint, Rosado alleges the following intentional torts:

- Defamation: FBI employees provided allegedly inaccurate information to a Port Authority of New York & New Jersey detective conducting a background check on Rosado. (Count 3).

- Invasion of Privacy: Rosado's debts were improperly discussed during an EEO mediation. (Count 5).

- Defamation: SAC Ward stated that Rosado had an "active shooter profile." (Count 17, ¶ 41).

- Defamation: Several FBI employees took Rosado's remarks out of context and characterized them as threats. (Count 18).

- Defamation: The FBI's Chief Security Officer lied about a conversation with Rosado and made inflammatory remarks that Rosado had the capacity to hurt himself or others. (Count 19).

- Defamation: An unknown individual told the FBI's Inspection Division investigator that Plaintiff had taken the Special Agent examination without a college degree. (First Count 20).

Thus, Rosado's intentional-tort claims appear to fall into two categories: defamation claims and invasion-of-privacy claims. The Court will address each category in turn.

The Third Circuit has held that "defamation suits against the United States are prohibited." *Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir. 2000). And courts in this District have dismissed defamation claims against the United States under Rule 12(b)(1). *See, e.g.*, *Dileo v. Mabus*, No. 14-4246, 2015 WL 4612714, at *4 (D.N.J. July 31, 2015) (dismissing with prejudice defamation claim against the United States); *Sash v. United States*, No. 09-2074, 2010 WL 1529825, at *7 (D.N.J. Apr. 14, 2010) (same); *Borawski v. Henderson*, 265 F. Supp. 2d 475, 483-84 (D.N.J. 2003) (same). The Court therefore lacks subject-matter jurisdiction over Rosado's defamation claims and must dismiss them with prejudice.

According to Defendant, the FTCA's intentional-tort exception also includes claims for invasion of privacy. (D.E. No. 66-1 at 7). In support, Defendant cites *Borawski*. (*Id.*) (citing 265 F. Supp. 2d at 483-84). Defendant also cites two cases that characterize claims for invasion of privacy as intentional torts—but those cases do not involve the FTCA or the United States as a defendant. (*See id.* at 7-8) (citing *Jeter v. N.J. Transit*, No. L-7347-03, 2009 WL 1118727, at *7 (N.J. Sup. Ct. App. Div. 2009) and *Roe v. Rutgers*, No. 13-1762, 2013 WL 3446456, at *5 (D.N.J. July 9, 2013)).

Defendant appears to overstate the holding in *Borawski*. There, the court did not hold that the FTCA bars all invasion-of-privacy claims against the United States; rather, the court noted that the plaintiff's allegations in support of his invasion-of-privacy claim related solely to his defamation and slander claims. *See Borawski*, 265 F. Supp. 2d at 484. The court reasoned that "[b]ecause the FTCA precludes claims 'arising out of' defamation and slander, the invasion-of-privacy . . . claim[] also must fail." *See id.* (citing 28 U.S.C. § 2680(h)).

Indeed, another court in this Circuit distinguished *Borawski* on this basis and found that the plaintiff's claims for invasion of privacy were not barred under the FTCA. *See Ruddy v. United States*, No. 11-1100, 2011 WL 5834953, at *4 (M.D. Pa. Nov. 21, 2011) (stating that a claim for invasion of privacy is allowable under the FTCA so long as it does "not actually arise out of libel or slander"). In *Ruddy*, the court explained that the plaintiff's "invasion of privacy claims are based on Defendants eavesdropping on his private phone call (intrusion upon seclusion), and on their 'giving publicity to the Plaintiff's doctor's statement' (false light)." *Id.* at *4. In other words, because the plaintiff's invasion-of-privacy claims did not arise out of libel or slander (or any other exception), the FTCA did not bar it.

So, the question before the Court is whether Rosado's invasion-of-privacy claim arises out of libel, slander, or any other exception to the United States' waiver of sovereign immunity. As best as the Court can decipher, Rosado alleges that he and other FBI personnel attended an EEO mediation in January 2010. (FAC at 26-27). According to Rosado, ASAC Dave Velazquez (who did not attend the meeting but "has responsibility for the Newark Division's Annual Financial Disclosure Program") instructed two FBI employees "to discuss whether Plaintiff disclosed a specific school bill on his disclosure form." (*Id.*). Rosado takes issue with that discussion. (*See id.*).

In particular, he states that "this discussion was done in casual conversation, which [he] has very serious issues with." (*Id.*). He also alleges that (i) "any requests to verify information on an employee's financial disclosure is going to emanate from FBI Headquarters in Washington D.C., not the Division level"; (ii) "said request will and should specifically come from the Security Division at FBIHQ, NOT the Division level"; and (iii) "the request will be in writing and specific." (*Id.*). In essence, Rosado argues that the informal request for financial disclosure made during the EEO mediation runs afoul of standard FBI protocol. (*See id.* at 27-28). These allegations do not appear to "arise out of" slander, libel, or any other exception to the United States' waiver of sovereign immunity.

But there is a different problem with Rosado's invasion-of-privacy claim. "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." *Medina v. City of Phila.*, 219 F. App'x 169, 172 (3d Cir. 2007) (citing 28 U.S.C. § 2401(b)). This exhaustion requirement is jurisdictional and may not be waived. *Id.* Defendant argues that even if the FTCA's waiver of sovereign immunity encompassed Rosado's intentional torts, Rosado would not be permitted to file in federal court unless he first presented his claim to the appropriate federal agency, and that federal agency finally denied his claim. (*See* D.E. No. 66-1 at 7 n.2).

Rosado carries the burden of proof to establish presentment of his claim to the FBI. *See Medina*, 219 F. App'x at 172. And he has not identified—nor has the Court found—anything in the record to suggest Rosado satisfied his presentment requirement. Accordingly, the Court lacks subject-matter jurisdiction over Rosado's claim for invasion of privacy and must dismiss it with prejudice.

B.     **Title VII Retaliation Claim**

1.     **Law**

Under Title VII, it is an unlawful employment practice for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  To establish a prima face case of retaliation under Title VII, a plaintiff must show that (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action.  *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).

A plaintiff's retaliation claim will survive a motion to dismiss if the plaintiff "pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the prima facie elements.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

*a.     First Element: Protected Activity*

An employee is engaging in protected activity when he participates in Title VII's statutory processes or otherwise opposes employment practices made illegal by Title VII.  *Curay-Cramer v. Ursuline Academy of Wilmington, De., Inc.*, 450 F.3d 130, 134 (3d Cir. 2006).  As a threshold matter, "opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context."  *Id.* at 135.  For example, the Third Circuit has held that a letter to an employer's HR department was not protected activity because it did not specifically complain about age discrimination.  *See Barber v. CSX Distribution Servs.*, 68 F.3d

694, 701-02 (3d Cir. 1995).  Under Third Circuit law, "a general complaint of unfair treatment" is insufficient to establish protected activity under Title VII.  *See id.* at 702.

There is no "hard and fast rule" for whether the conduct in a given case is protected.  *Curay-Cramer*, 450 F.3d at 135.  Rather, courts evaluate "the facts of each case in light of the statutory and legislative intent."  *Id.*  The Third Circuit has held that protected activity "includes not only an employee's filing of formal charges of discrimination against an employer but also informal protests of discriminatory employment practices, including making complaints to management."  *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015).  Courts look to the message being conveyed rather than the means of conveyance.  *See Barber*, 68 F.3d at 702.

Although a plaintiff in a retaliation case "need not prove the merits of the underlying discrimination complaint," he must have "acted under a good faith, reasonable belief that a violation existed."  *Moore*, 461 F.3d at 344.  "This standard requires an 'objectively reasonable belief' that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute."  *Daniels*, 776 F.3d at 193-94.

### b.	Second Element: Adverse Employment Action

"[A] plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Moore*, 461 F.3d at 341 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  The Supreme Court has explained that "it is important to separate significant from trivial harms," as Title VII "does not set forth a general civility code for the American workplace."  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (citation and internal quotation marks omitted).

### c.    Third Element: Causal Connection

For the third element, a plaintiff must show "a causal connection between the plaintiff's opposition to . . . unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Moore*, 461 F.3d at 341-42. "To demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if 'unusually suggestive.'" *Daniels*, 776 F.3d at 196. In the absence of "such a close temporal proximity," courts consider "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Id.*

### 2.    Analysis

In his Fourth Amended Complaint, Rosado alleges several causes of action for retaliation or reprisal. Defendant challenges about half of them as lacking both protected activity and a causal connection, and the other half as lacking just a causal connection. (*See* D.E. No. 66-1 at 13-17). The first half includes the following claims:

- Rosado was not considered to fill a vacancy in the Evidence Response Team in 2009. (Count 1).

- Rosado's supervisor scheduled Rosado for a shift that forced him to miss a Civil Service Exam for the New Jersey State Police in 2004. (Count 2).

- When Rosado disclosed in connection with the FBI's Special Agent Exam that he did not have his college degree, he was referred to the FBI's Inspection Division. (Second Count 4).

- ASAC Velazquez prevented Rosado from participating in the FBI's student-loan-repayment program. (Counts 6 & 7).

- After his removal, Rosado was forced to participate in mental health exams. He incorporates by reference an affidavit from a retired FBI Deputy Assistant Director, Security Division, which states that Rosado had come to her attention in 2011 and

that she determined he "had become a serious security threat" and therefore recommended him for a Fitness-for-Duty evaluation. Rosado alleges that this statement omits exculpatory evidence and violates his rights under *Brady v. Maryland*. (Counts 12 & 13).

- SAC Ward retaliated against Rosado by referring him to the Inspection Division. (Count 14).

The second half, for which Defendant concedes that Rosado sufficiently alleges protected activity

(*see* D.E. No. 66-1 at 14-15), includes the following claims:

- Two months after SAC Ward arrived at the Newark Division in March or April 2010, EEO investigators arrived to investigate Rosado's discrimination allegations. SAC Ward told Rosado he would not retaliate against him if Rosado contacted then-Director Robert Mueller. SAC Ward then retaliated by referring Rosado to the FBI's Inspection Division, which terminated his career. (First Count 4).

- In January 2010, Rosado participated in an EEO mediation that was designed to go nowhere and in which another FBI employee improperly investigated Rosado's personal finances and discussed his debts. (Count 5).

- After the 2010 EEO investigation of Rosado's complaints, it "appears that Ward took exception" to the use of FBI resources for this investigation and referred Rosado to the Inspection Division. (First Count 8, ¶ 33).

- SAC Ward retaliated against Rosado for EEO activity by holding an unwarranted meeting with Rosado about his performance issues. (Second Count 20).

- The FBI made it difficult for Rosado to seek future employment based on his EEO activity. (Third Count 20).

The Court finds that, for some of these claims, Rosado has alleged enough "to raise a reasonable expectation that discovery will reveal evidence" of the prima facie elements of retaliation. *See Connelly*, 809 F.3d at 789. This is especially true in light of Rosado's *pro se* status. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). In particular, Rosado has stated retaliation claims stemming from the following incidents: (i) ASAC Velazquez's efforts to prevent Rosado from being considered for the Evidence Response Team; (ii) ASAC Velazquez's efforts

to exclude Rosado from the FBI's student-loan-repayment program; and (iii) SAC Ward's referral of Rosado to the Inspection Division after the June 2010 EEO investigation.

For the first two incidents, Defendant argues that Rosado fails to allege protected activity or causal connection. (*See* D.E. No. 66-1 at 13-14). The Court disagrees. In Count 1, Rosado alleges that ASAC Velazquez was the target of his discrimination complaint; that ASAC Velazquez placed him at the bottom of the list "so as not to be considered" for the Evidence Response Team; and that Special Agent Laura Robinson, who interviewed Rosado for the Evidence Response Team, told SAC Ward that "'interference' was run in the selection process." (FAC ¶ 25). Count 6 (styled as "Adverse Action/Retaliation") is similar: Rosado alleges that ASAC Velazquez ran the FBI's student-loan-repayment program, which had "a limited number of slots," and that ASAC Velazquez placed Rosado "at the bottom of the list so as not to be considered." (*Id.* ¶ 31).

Although Rosado does not mention EEO activity in Count 6, in the Court's view, his allegations throughout the Fourth Amended Complaint—and particularly in Count 1—raise "a reasonable inference that discovery will reveal evidence of the elements necessary to establish" retaliation. *See Connelly*, 809 F.3d at 793. And while the Court might prefer additional supporting allegations from an attorney, Rosado is proceeding *pro se*, and the Court is obligated to construe his allegations liberally. *See, e.g.*, *Jackson v. Carter*, No. 16-8968, 2017 WL 2426862, at *5 (D.N.J. June 5, 2017) (declining to dismiss *pro se* plaintiff's claim even though "it would merit dismissal" if it "had been filed by an attorney"). Moreover, although Defendant's arguments have

some merit, they are likely better suited for summary judgment. Indeed, most of the retaliation cases Defendant cites involve decisions resolving summary-judgment motions.[4]

For SAC Ward's referral of Rosado to the Inspection Division, Defendant argues that Rosado fails to allege a causal connection. (D.E. No. 66-1 at 15-16). The relevant timeline is as follows. During an August 2007 inspection of the Newark Office, Rosado divulged that the Administrative Branch—including ASAC Velazquez—was misappropriating the overtime budget. (*See* FAC ¶¶ 7, 28). Rosado alleges that this disclosure led to harassment and retaliation. (*See, e.g.*, *id.* ¶¶ 8, 24). As a result, Rosado filed an EEO complaint in November 2008 about the harassment and retaliation. (*Id.* ¶ 2). That complaint led to an EEO investigation at the Newark FBI office from June 1, 2010 through June 10, 2010. (*Id.*).

Two months before that investigation, SAC Ward arrived at the Newark Division. (*Id.* ¶ 28). Eight months later, in February 2011, Rosado emailed SAC Ward and others about his discrimination and retaliation claims with the EEO. (*See id.*) (citing D.E. No. 21, Ex. 5). In that email, Rosado discussed, among other things, his hostile-work-environment claim and warned that if his matter was not resolved by March 3, 2011, he would contact the FBI Director. (D.E. No. 21, Ex. 5). In response, SAC Ward emailed Rosado and told him there would be no reprisal if he

---

[4]     (D.E. No. 66-1 at 12) (citing *Spence v. Foxx*, 159 F. Supp. 3d 483, 499 (D.N.J. 2014) (granting summary judgment); *Daniels*, 776 F.3d at 196-97 (affirming summary judgment); *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288-89 (3d Cir. 2001) (reversing summary judgment); *Swanson v. Nw. Human Servs., Inc.*, 276 F. App'x 195, 197 (3d Cir. 2008) (affirming summary judgment)); (D.E. No. 73 at 3-4) (citing *Carter v. Midway Slots & Simulcast*, 511 F. App'x 125, 129 (3d Cir. 2013) (affirming summary judgment); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (affirming summary judgment); *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (affirming-in-part and reversing-in-part summary judgment); *Marley v. Donahue*, No. 14-1597, 2017 WL 2106125, at *6 (D.N.J. May 12, 2017) (granting summary judgment); *Mercer v. SEPTA*, 608 F. App'x 60, 65 (3d Cir. 2005) (affirming summary judgment); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) (affirming-in-part and reversing-in-part judgment notwithstanding the verdict); *LeBoon*, 503 F.3d at 232 (affirming summary judgment)).

contacted the FBI Director's office. (*Id.*). Two months later, SAC Ward referred Rosado to the Inspection Division. (FAC ¶ 28).

Defendant argues that Rosado has failed to allege temporal proximity or other circumstances that show a connection between the protected conduct and the adverse action. (*See* D.E. No. 66-1 at 15-16; D.E. No. 73 at 3-5). For temporal proximity, Defendant argues that the June 2010 EEO investigation is too far removed from the April 2011 referral to the Inspection Division to show causal connection. (*See* D.E. No. 73 at 3). For other circumstances showing a causal connection, Defendant argues that Rosado "fails to allege a single fact that would indicate a causal link." (D.E. No. 66-1 at 15). According to Defendant, the "single link alleged is the conclusory allegation that 'it appears that Ward took exception' to the FBI's 2010 EEO investigation." (*Id.*) (citing FAC ¶ 33).

Defendant is correct that the EEO investigation occurred ten months before SAC Ward referred Rosado to the Inspection Division. But Rosado's email exchange with SAC Ward—in which Rosado discussed his EEO complaint and specifically his hostile-work-environment claim—occurred two months before the referral. (*See* D.E. No. 21, Ex. 5). The Court declines at this time to find that Rosado's allegations do not show sufficient temporal proximity, especially since many of the cases Defendant cites on this issue involved summary-judgment motions.

As for other circumstances showing a causal connection, Rosado's allegation that SAC Ward took exception to the FBI's investigation is more specific than Defendant asserts. (*See* D.E. No. 66-1 at 15). Specifically, Rosado alleges that SAC Ward "took exception *that FBI resources* were taking two weeks to investigate [his] allegations." (FAC ¶ 33). Rosado also alleges that SAC Ward antagonized him after the EEO investigation. (*Id.* ¶ 19). Again, although the Court

might prefer additional supporting allegations from an attorney, Rosado is proceeding *pro se*, *see Jackson*, 2017 WL 2426862, at *5, and the Court will give him every favorable inference.

Finally, SAC Ward's assurance that he would not retaliate against Rosado if Rosado contacted the FBI Director does not alter the Court's finding that Rosado "has raised a reasonable inference that discovery will reveal evidence of the elements necessary to establish" retaliation. *See Connelly*, 809 F.3d at 793. To be sure, this is true "even if one believed it 'unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.'" *Id.* (quoting *Philips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

In sum, although Rosado's retaliation claims are light on factual allegations, the Court is obligated to construe his pleading liberally. To that end, the Court can "discern the outlines of a claim," *see Jackson*, 2017 WL 2426862, at *5, regarding the following incidents: (i) ASAC Velazquez's efforts to prevent Rosado from being considered for the Evidence Response Team; (ii) ASAC Velazquez's efforts to exclude Rosado from the FBI's student-loan-repayment program; and (iii) SAC Ward's referral of Rosado to the Inspection Division after the June 2010 EEO investigation. The Court therefore grants-in-part and denies-in-part Defendant's motion to dismiss Rosado's retaliation claims.

### C.    Title VII Discrimination Claim

#### 1.    Law

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, a plaintiff can assert both a claim for disparate treatment and a claim for hostile work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To

defeat a motion to dismiss in this context, a plaintiff need not prove a prima facie case; rather, a plaintiff need only allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Connelly*, 809 F.3d at 789 (citation and internal quotation marks omitted).

### a.       *Disparate Treatment*

To establish a prima face case of discrimination under Title VII, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination." *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007).

A Title VII plaintiff may make a claim for discrimination under either the pretext theory (set forth in *McDonnell Douglas*[5]) or the mixed-motive theory (set forth in *Price Waterhouse*[6]). *Connelly*, 809 F.3d at 787. For the pretext theory, the plaintiff "claims that an employer's stated justification for an employment decision is false." *Id.* For the mixed-motive theory, the plaintiff "claims that an employment decision was based on both legitimate and illegitimate reasons." *Id.* Under either theory, the plaintiff must establish that his "protected status was a factor in the employer's challenged action." *Id.* at 788. The difference, however, is "the degree of causation that must be shown: in a 'mixed-motive' case, the plaintiff must ultimately prove that [his] protected status was a 'motivating' factor, whereas in a non-mixed-motive or 'pretext' case, the plaintiff must ultimately prove that [his] status was a 'determinative' factor." *Id.*

---

[5]       *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[6]       *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### b.        *Hostile Work Environment*

Title VII prohibits discriminatory harassment that is "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation and alteration omitted).  To establish a prima facie case of hostile work environment, a plaintiff must show (1) that he suffered intentional discrimination because of his status in a protected class; (2) that the discrimination was severe or pervasive; (3) that the discrimination detrimentally affected him; (4) that the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior*.  *See id.*

Relevant here, the second element requires conduct that is "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).  Discriminatory conduct can be either severe or pervasive.  *Castleberry v. STI Grp.*, 863 F.3d 259, 263-64 (3d Cir. 2017).  In other words, "'severity' and 'pervasiveness' are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." *Id.* at 264 (citation omitted).

"To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel*, 706 F.3d at 168 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

### 2.    Analysis

Rosado alleges the following Title VII discrimination claims:

- SAC Ward asked Rosado to surrender his personally owned firearms.  (Second Count 8).

- Someone placed a box of feminine products on Rosado's desk.  (Counts 9, 10 & 11).

- Rosado was referred for a Fitness for Duty mental health examination over his objection.  (Counts 12, 13 & 15).

- The FBI failed to promote Rosado to GS-10.  (Count 16).

- Rosado was referred to the FBI's Employee Assistance Program.  (Count 21).

Rosado also alleges throughout the Fourth Amended Complaint that he was subjected to a hostile work environment (*see, e.g.*, FAC ¶¶ 16, 20, 22, 33, 36, 41, 44), though he does not style any of his counts as a hostile-work-environment cause of action.  Accordingly, the Court will analyze the above instances separately as claims of disparate treatment and collectively as a claim for hostile work environment.

For disparate treatment, the Court finds that Rosado has failed to state a claim.  In particular, Rosado's allegations do not raise a reasonable expectation that discovery will establish the fourth element—circumstances giving "rise to an inference of discrimination."  *See Johnson*, 214 F. App'x at 241.  As Defendant persuasively argues, Rosado "makes no mention of any connection between his race, gender, or national origin and the acts he protests."  (D.E. No. 66-1 at 22).  And even giving the Fourth Amended Complaint a liberal reading in light of Rosado's *pro se* status, the Court cannot discern any connection between Rosado's status in a protected class and the allegedly discriminatory acts.

Rosado's hostile-work-environment allegations fare no better.  Viewing the allegations liberally, in totality, and in the light most favorable to Rosado, the Court finds that the Fourth

Amended Complaint does not raise a reasonable expectation that discovery will establish the first or second elements—that Rosado suffered intentional discrimination *because of* his status in a protected class, and that the discrimination was severe or pervasive. *See Mandel*, 706 F.3d at 167. Again, Rosado makes no mention of—and the Court cannot discern—any connection between his status in a protected class and the alleged hostile or discriminatory acts.

Nor do Rosado's allegations suggest that discovery will reveal severe or pervasive conduct. To be sure, some of the alleged conduct—like the feminine-product incident—was "offensive, insensitive and, no doubt, hurtful" to Rosado. *See Spence v. LaHood*, No. 11-3972, 2013 WL 355913, at *4 (D.N.J. Jan. 29, 2013). But that conduct does not rise to the level of severe or pervasive under Title VII. *See, e.g.*, *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (observing that "offhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Similarly, Rosado's allegations about his performance reviews and meetings with his supervisors—even when viewed in conjunction with his other allegations—do not suggest severe or pervasive conduct. *See Alvarez v. Sears Holding Corp.*, No. 11-0783, 2013 WL 1335385, at *1 (M.D. Pa. Mar. 29, 2013).

Accordingly, the Court will grant Defendant's motion with respect to Rosado's claims for disparate treatment and hostile work environment. Because the Court has permitted Rosado numerous attempts to amend his pleading, the Court views any further amendment as both inequitable and futile. *See Wadhwa v. Sec'y, Dep't of Veterans Affairs*, 505 F. App'x 209, 216 (3d Cir. 2012); *Rhett v. N.J. State Superior Court*, 260 F. App'x 513, 516 (3d Cir. 2008). Moreover, Defendant is correct in that Defendant's "prior motions to dismiss and the July 2017 hearing have further elucidated [Rosado] as to the elements of a complaint that states a claim upon which relief

may be granted." (D.E. No. 66-1 at 23). Rosado's remaining discrimination claims are therefore dismissed with prejudice.[7]

## IV.    Conclusion

For the foregoing reasons, the Court grants-in-part and denies-in-part Defendant's motion to dismiss. Rosado's retaliation claims specified above may proceed. All remaining claims are dismissed with prejudice. An appropriate Order accompanies this Opinion.

_s/Esther Salas_
**Esther Salas, U.S.D.J.**

---

[7]    Although the Fourth Amended Complaint does not expressly assert a claim under the Whistleblower Protection Act ("WPA"), Rosado repeatedly refers to his August 2007 disclosure to investigators about alleged misappropriation as a "whistleblowing" incident. (*See, e.g.*, FAC ¶¶ 2, 4, 12). For purposes of completeness, the Court agrees with Defendant that Rosado's "failure to specify a cause of action, characterize any specific count as a WPA claim, and to allege the elements of a WPA cause of action leave no basis upon which to construe any portion of [his] pleading as asserting a claim for relief under the WPA." (D.E. No. 66-1 at 19).