**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMESON ROSADO,<br><br>   *Plaintiff*,<br><br>   v.<br><br>ATTORNEY GENERAL WILLIAM BARR,<br><br>   *Defendant*. | Civil Action No. 15-3999<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

*Pro se* Plaintiff Jameson Rosado asserts that after he reported purported wrongful conduct at his workplace, he was retaliated against in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Presently before the Court is Defendant's motion for summary judgment. D.E. 135. Plaintiff opposes the motion, D.E. 136, and Defendant filed a brief in reply, D.E. 137.[1] The Court reviewed all submissions made in support and in opposition to the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is **GRANTED**.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

As the parties are familiar with this matter, the Court will not provide a detailed factual background.[2] Instead, the Court recounts the key relevant facts here, and additional facts are

---

[1] Defendant's brief in support of his motion for summary judgment is referred to as "Def. Br." (D.E. 135-1); Plaintiff's brief in opposition is referred to as "Plf. Opp." (D.E. 136); and Defendant's reply brief is referred to as "Def. Reply" (D.E. 137).

[2] The background facts are drawn from Defendant's Statement of Undisputed Material Facts

discussed in the Analysis section below.

Plaintiff worked in various roles at the FBI's Newark Division from 1992 to 2011; his last position was a Technical Information Specialist. DSOMF ¶¶ 1-2. In 2007, Plaintiff reported that an administrative officer was abusing the overtime leave policy. *Id.* ¶¶ 3-4. In 2008, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging that he was retaliated against because of his 2007 whistleblowing activities. *Id.* ¶ 5. Plaintiff contends that he suffered from additional retaliation at the FBI because of his 2007 report and the 2008 EEO complaint. Three alleged instances of retaliation are at issue in this motion.

First, Plaintiff applied to join the Evidence Response Team ("ERT") in 2009. On November 23, 2009, the FBI reviewed and ranked the applicants in a number of categories; Plaintiff was ranked 19th out of 21 candidates. *Id.* ¶¶ 69-81. According to Plaintiff, however, he was more senior to all of the applicants except one, and Plaintiff appears to suggest that he should have been ranked higher because of his seniority. Meyler Decl. Ex. 1 at T35:2-9. On January 15, 2010, the FBI made its selections, and Plaintiff was not chosen. DSOMF ¶ 82. Plaintiff contends that he was not selected for the ERT as retaliation for his 2007 overtime abuse report. Specifically, Plaintiff believes that David Velazquez, the Assistant Special Agent-in-Charge of the Newark Division, "*may* have told somebody not to put [Plaintiff] on" the ERT. Meyler Decl. Ex. 1, T26:22-25 (emphasis added). Velazquez started at the Newark Office in January 2009, DSOMF ¶ 6, so Velazquez was not present when Plaintiff reported the alleged overtime abuse in 2007 or filed his EEO complaint in 2008.

---

("DSOMF"), D.E. 135-2; and the Declaration of Daniel W. Meyler ("Meyler Decl."), D.E. 135-3, and its supporting exhibits. Plaintiff did not respond to DSOMF and did not file his own statement of material facts. The Court, however, reviewed the documents submitted with *pro se* Plaintiff's opposition, D.E. 136, and based on this review, there do not appear to be factual disputes as to the key events that occurred in this matter.

Plaintiff's second claim involves his failure to be chosen for the Student Loan Repayment Program ("SLRP"). According to Plaintiff, each year FBI Headquarters repays the student loans for a limited number of employees. DSOMF ¶ 87. At the Newark Office, the Career Board allegedly selected participants for the SLRP. Plaintiff was told by another FBI employee, who was on the Career Board, that Velazquez was the decisionmaker for the SLRP, as it was "Dave's program." *Id.* ¶ 94. Plaintiff applied for the program in 2009 and 2010. Plaintiff believes that he was qualified to be a participant but was not selected either year. *Id.* ¶¶ 89-90, 96. Plaintiff contends that he was not chosen as retaliation for his overtime abuse report and that Velazquez was somehow involved. *Id.* ¶ 97.

In addition, Plaintiff believes that Michael Ward, the Special Agent-in-Charge of the Newark Division, was required to write Plaintiff a recommendation for his 2010 application but "elected not to for personal reasons." Meyler Decl. Ex. 1 at T46:10-18; *see also* DSOMF ¶ 7. Ward started at the Newark Division in March 2010 and was Plaintiff's third-line supervisor, "which means that Ward was three levels above Plaintiff." DSOMF ¶¶ 103-04. Plaintiff told Ward about his EEO matter sometime after Ward started at the Newark Office, and Ward was aware of the EEO investigation that occurred in June 2010. *Id.* ¶¶ 108-10. Plaintiff, however, believes that Ward and Velazquez were "talking to people" in the Newark Office about Plaintiff before they both started working at the office. Meyler Decl. Ex. 1 at T54:3-10.

Finally, Plaintiff alleges that Ward referred Plaintiff to the Inspection Division in 2011, in retaliation for his 2007 whistleblowing activity. According to Plaintiff, the Inspection Division is "responsible for compliance" within the FBI. Meyler Decl. Ex. 1 at T52:11-22. Plaintiff sent Ward an email on February 22, 2011, shortly before the Inspection Division referral, stating that Plaintiff was not going to comply with a required financial disclosure program because of his EEO

3

matter. Plaintiff stated that if the EEO matter settled, Plaintiff could provide the financial disclosure information. *See* Meyler Decl. Ex. 4 at 2. Ward replied to Plaintiff, suggesting that Plaintiff speak to the appropriate people about his failure to participate, "as your declaration to me that you will not respond to this security requirement may not protect you from associated civil and administrative penalties." *Id.* Plaintiff responded with a second email that again discussed settling the EEO matter. Plaintiff closed the email by telling Ward that if the EEO matter was not settled in the next week, "I cannot be responsible for any performance related issues should the Bureau not settle this." *Id.* at 1-2. Plaintiff testified that his email was not intended to be a threat not to perform but was merely a statement that his performance was likely to suffer because he was working in a hostile work environment. Meyler Decl. Ex. 1 at T93:3-11. Ward's email response said that Plaintiff's EEO matter was separate from his work responsibilities and that

> [r]egardless of what happens in your EEO case, you are expected to successfully fulfill the day to day duties and responsibilities of your position. Your comment that you cannot be responsible for performance related issues if the Bureau doesn't settle your complaint to your satisfaction is an obvious threat and thus, unacceptable. You will continue to be held accountable for your work performance.

Meyler Decl. Ex. 4 at 1. Plaintiff sent Ward an additional email on March 9, 2011 that again, discussed settling Plaintiff's EEO matter. Among other things, Plaintiff stated that "I cannot offer any assurance that performance may not be a problem in the future while this matter is pending, as I have done nothing wrong." Meyler Decl. Ex. 5.

Ward referred Plaintiff to the Inspection Division on March 14, 2011 through a written memo requesting that an administrative inquiry be initiated (the "Referral Memo"). DSOMF ¶ 19; Meyler Decl. Ex. 8. Ward's Referral Memo states that Plaintiff had a history of insubordinate behavior and outlined a number of alleged examples. Ward included the February 22 and March

4

9 emails as examples, which Ward viewed as "thinly veiled threats of limited or no work performance if his demands are not met." Meyler Decl. Ex. 8 at 3. The Referral Memo also discussed emails from Plaintiff in which Plaintiff claimed to have a college degree when he actually did not. *Id.* In fact, during the Inspection Division's investigation, the FBI learned that Plaintiff had previously submitted three applications to be an FBI Special Agent, stating in each that he had a college degree although Plaintiff had not yet earned a degree.[3] DSOMF ¶¶ 42-53. After Ward's referral, an agent from the Inspection Division conducted an investigation, and the Inspection Division ultimately suggested that Plaintiff should be terminated from the FBI. Meyler Decl. Ex. 11.

Plaintiff filed suit on June 12, 2015, alleging employment discrimination claims in violation of Title VII. D.E. 1. After a series of motions to dismiss and amended complaints, on May 29, 2018, Judge Salas dismissed all of Plaintiff's causes of action except three claims for Title VII retaliation. D.E. 83, 84. On April 3, 2019, Defendant was granted leave to file a motion for summary judgment, and Plaintiff was granted leave to file a cross-motion for summary judgment. D.E. 125. Defendant filed his motion for summary judgment on June 7, 2019. D.E. 135. This case was reassigned to the undersigned on July 24, 2020. D.E. 144.

## II.   SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return

---

[3] Plaintiff completed the Special Agent applications in 2007 and 2009 but did not earn his degree until 2011. DSOMF ¶¶ 42-53.

a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence,"

however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

**III. ANALYSIS**

Defendant seeks summary judgment as to Plaintiff's three Title VII retaliation claims. Under Title VII, it is an unlawful employment practice for an employer "to discriminate against any of his employees . . . because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Where a plaintiff does not present direct evidence of discrimination, courts apply the three-step, burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff must first establish a *prima facie* case of retaliation. If a plaintiff puts forth a *prima facie* case, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). Finally, at the third step, a plaintiff must "convince the factfinder both that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action." *Id.* (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006)). In other words, a plaintiff must prove, by a preponderance of the evidence, that the harm would not have occurred but-for the protected activity. *Id.* at 258. These requirement standards are discussed in more detail below.

**A.** *Prima Facie* **Case**

Defendant contends that Plaintiff's claims must be dismissed because Plaintiff cannot make out a *prima facie* retaliation claim. Namely, Defendant argues that Plaintiff fails to establish a causal connection for each claim. Def. Br. at 18-20. To establish a *prima facie* retaliation claim, a plaintiff must show that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her

participation in the protected activity and the adverse employment action."[4]  *Moore*, 461 F.3d at 340-41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

To establish a causal connection at the *prima facie* stage, a plaintiff "must produce evidence 'sufficient to raise the inference that her protected activity was the *likely reason* for the adverse employment action.'"  *Carvalho-Grevious*, 851 F.3d at 259 (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)) (emphasis in original).  A court may consider a "broad array of evidence" to find a causal link.  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).  "Unusually suggestive" temporal proximity between the protected activity and adverse action "is sufficient standing alone to create an inference of causality and defeat summary judgment."  *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citations omitted).  Otherwise, a court considers "whether the proffered evidence, looked at as a whole, may suffice to raise the inference."  *Id.* at 232 (internal citation omitted).  Evidence may include an "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus."  *Id.* at 232-33.

### 1. Emergency Response Team Claim

Plaintiff filed an EEO complaint in November 2008, indicating retaliation that he believed resulted from reporting the alleged overtime leave abuse in 2007.  Meyler Decl. Ex. 1 at T63:4-6. Plaintiff applied for the ERT in September 2009, and the FBI made its selections on January 15,

---

[4] Defendant only focuses on the causal connection aspect of Plaintiff's *prima facie* claim.  Thus, Defendant appears to concede that Plaintiff sufficiently establishes that he engaged in protected activity and suffered from an adverse employment action.  In fact, filing an EEO complaint is a "quintessential protected activity," *Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 97 (3d Cir. 2016), and each of the alleged adverse employment actions would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore*, 461 F.3d at 341.  Accordingly, the Court focuses on the causal connection prong.

2010.  DSOMF ¶¶ 69-82.  Thus, using the date of Plaintiff's EEO complaint, the adverse action occurred approximately a year after the protected activity.  This length of time is not unusually suggestive, and Plaintiff cannot rely solely on temporal proximity to establish a causal connection.  *See LeBoon*, 503 F.3d at 233 (stating that "a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment"); *see also Thomas-Taylor v. City of Pittsburgh*, 605 F. App'x 95, 98-99 (3d Cir. 2015) (concluding that a more than one-year gap between filing charge and the adverse employment action was not unusually suggestive).

Plaintiff submits that the fact he received a low rank among the candidates, despite his seniority, demonstrates that his failure to be placed on the ERT is evidence of retaliation.  Meyler Decl. Ex. 1 at T35:2-9.  But Plaintiff does not provide any evidence as to who else applied for the ERT, their qualifications for the position, or how seniority factors into the decision-making process.  Consequently, without more, the low rank alone does not provide sufficient evidence of a retaliatory animus.  Plaintiff also believes that Velazquez and Ward *may* have been involved in the ERT selection process, specifically the decision to not select Plaintiff.  *See id.* at T26:22-25 (Plaintiff explaining that Velazquez "*may* have been involved in the career board . . . [h]e *may* have told somebody not to put me on") (emphases added); *id.* at T22:1-4 (Plaintiff explaining that Ward may have been involved because Ward "was talking to people about [Plaintiff] before he was appointed to Newark"); *see also id.* at T20:17-6.  But a plaintiff's "mere belief or contention" that he was retaliated against is not sufficient to create a material issue of fact as a plaintiff "must rebut the motion [for summary judgment] with facts in the record."  *Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 136-37 (3d Cir. 2012).

Plaintiff provides no other evidence that would allow a reasonable jury to draw the

9

inference that his EEO complaint was the likely reason for his failure to be selected. In fact, it is not even clear if the ERT decisionmakers knew about Plaintiff's EEO complaint as Plaintiff does not indicate who was even responsible for the decision. Meyler Decl. Ex. 1 at T29:12-14. Because there is insufficient evidence in the record to support an inference of causal connection, Plaintiff cannot establish a *prima facie* retaliation case with respect to his ERT claim. Summary judgment is granted to Defendant on this claim.

### 2. Student Loan Repayment Program

Next, Plaintiff maintains that he was not chosen for the SLRP in 2009 and 2010 as retaliation for his EEO matter and his underlying whistleblowing. Again, Plaintiff brought his EEO matter in November 2008. He submitted his first SLRP application approximately one year after filing the complaint, in August or September of 2009, and submitted his second application one year later, in August or September of 2010. *Id.* at T38:4-14. As discussed, these are not unusually suggestive lengths of time, and Plaintiff cannot rely solely on temporal proximity to establish a causal connection. *See LeBoon*, 503 F.3d at 233; *see also Thomas-Taylor*, 605 F. App'x at 98-99. Accordingly, Plaintiff must provide additional circumstantial evidence to demonstrate that his failure to be selected for the SLRP was likely retaliation for his whistleblowing.

Plaintiff explained that he was told by another employee, who was on the career board, that the SLRP was "Dave's [Velazquez] program." Meyler Decl. Ex. 1 at T39:15-41:10. Plaintiff believes that the fact it was "Dave's program" is "another element of a pattern" of retaliation involving Velazquez. *Id.* at T42:12-17. But as discussed, Plaintiff's "mere belief or contention" that he was retaliated against is not sufficient to create a material issue of fact. *Ullrich*, 457 F. App'x at 136-37. Plaintiff adds that Ward did not provide Plaintiff with a written recommendation in 2010 because of personal reason. Meyler Decl. Ex. 1 at T46:10-21. But Plaintiff fails to provide

10

any evidence establishing that Ward was a member of the Career Board, involved in the SLRP, or that the lack of a recommendation had an impact on the SLRP decision in 2010. Also, by relying on a personal reason, Plaintiff appears to concede that improper retaliation was not a factor. Thus, Plaintiff fails to provide sufficient evidence by which a reasonable jury could infer that his failure to be selected for the SLRP in 2009 and 2010 was likely due to retaliation. Plaintiff, therefore, fails to set forth a *prima facie* case as to his SLRP claim, and summary judgment is granted to Defendant on this claim.

### 3. Referral to the Inspection Division

Plaintiff's final claim involves Ward's referral of Plaintiff to the Inspection Division in March 2011. Relying on Plaintiff's 2007 report and 2008 EEO complaint, Defendant argues that there is no causal connection because, at a minimum, two years passed before Ward referred Plaintiff to the Inspection Division. Def. Br. at 23. This argument overlooks the fact that Plaintiff and Ward were involved in an email exchange on February 22, 2011 where Plaintiff discussed the pending EEO matter. *See* MTD Opinion at 15-16; Meyler Decl. Ex. 4. In addition, on March 9th, Plaintiff again discussed his desire to settle the EEO matter. *Id.* Ex. 5. Ward referred Plaintiff to the Inspection Division five days later, on March 14, 2011. DSOMF ¶ 19. Plaintiff filed his EEO complaint several years before which undercuts any argument concerning as the timing of the retaliatory action. But in her motion to dismiss opinion, Judge Salas expressed concern as to whether the February 2011 email could be considered as far as the timing argument. MTD Opinion at 15-16. Neither party addresses this issue – although it was highlighted by Judge Salas. And as the moving party, Defendant has the burden to show that he is entitled to relief. The Court, therefore, cannot determine whether Plaintiff states a *prima facie* case as to his Inspection Division claim. Summary judgment, therefore, is denied on these grounds.

### B. Defendant's Non-Discriminatory Reason for the Adverse Employment Decision

Assuming that Plaintiff makes out a *prima facie* retaliation claim with respect to his referral to the Inspection Division, the Court turns to the second step of the *McDonnell Douglas* framework. An employer can satisfy its burden of production at the second step by providing evidence that "advance[es] a legitimate, non-retaliatory reason for its conduct." *Moore*, 461 F.3d at 342 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)). Defendant argues that Ward had a legitimate reason to refer Plaintiff to the Inspection Division because (1) in the February and March emails, Plaintiff threatened to not perform his job unless the FBI settled his EEO matter; and (2) Plaintiff made false statements about having a college degree on Special Agent applications. Def. Br. at 26. Both of these proffered reasons appear in Ward's Referral Memo. Meyler Decl. Ex. 8 at 2. Moreover, a reasonable jury could determine that these proffered reasons constitute sufficient evidence for Defendant to meet his burden of production at the second step of the *McDonnell Douglas* framework.[5]

### C. Proffered Reason is Pretextual

A plaintiff asserting a Title VII retaliation claim has a higher burden than a plaintiff asserting a discrimination claim. For a retaliation claim, a plaintiff's "ultimate burden is to prove that retaliatory animus was the 'but-for' cause of the adverse employment action." *Carvalho-*

---

[5] In support his argument that there was a legitimate, non-retaliatory reason to refer Plaintiff to the Inspection Division, Defendant also relies on the fact that Plaintiff contacted then FBI Director Robert Mueller at his (Mueller's) home and sent Mueller a 15-paragraph email about Plaintiff's EEO matter. Def. Br. at 27-28. Plaintiff's contact with Mueller, however, occurred after Ward sent the Referral Memo. Moreover, Plaintiff contacted Mueller after Ward explicitly told Plaintiff in an email that "[t]here will be no reprisal if you deem it necessary to reach out to anyone at FBIHQ, including the Director's Office." DSOMF ¶ 56. This evidence, therefore, does not support Defendant's non-retaliatory reason for the referral. This is also the case for Defendant's argument as to Plaintiff's "Hurricane Jamie" statements. *See* Def. Br. at 27. The incident at issue occurred on August 30, 2011, DSOMF ¶ 32, approximately five months after Ward sent the Referral Memo.

12

*Grevious*, 851 F.3d at 258 (internal quotation omitted).  Thus, at the third step, a plaintiff "must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore*, 461 F.3d at 342 (*quoting Krouse*, 126 F.3d at 500-01).  A plaintiff can do this by "demonstrate[ing] weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a reasonable juror could conclude that the Defendants' explanation is unworthy of credence, and hence infer that the employer did not act for the asserted nonretaliatory reasons." *Carvalho-Grevious*, 851 F.3d at 262 (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)) (internal quotation marks and brackets omitted).

As for Plaintiff's perceived threats of non-performance, Plaintiff contends that he was never unwilling to perform his duties.  Instead, Plaintiff states that the February 22 email was not a threat; he was merely stating that it was difficult to perform his job in a hostile work environment. Meyler Decl. Ex. 1 at T92:1-93:11.  Plaintiff, however, concedes that the email could have been construed as a threat not to perform his work.  *Id.* at T93:15-23.   Moreover, Plaintiff's email did not reference any then-existing hostile work environment nor did it state that his performance would suffer due to the environment.  Critically, Ward's written response made unequivocally clear that Plaintiff's EEO matter was separate from his work performance.  Meyler Decl. Ex. 4 at 1.  In reply, Plaintiff again discussed settling the EEO matter and reiterated that he could not ensure that his future performance would not be problematic while the EEO case remained pending. Meyler Decl. Ex. 5.  Again, Plaintiff failed to mention any ongoing work environment issue or that such issue was impacting his performance.

As for Plaintiff's false statement about a college degree, Plaintiff admits that he did not have a college degree when he completed the applications, but states that he believed he would

13

have a degree by the time his applications were considered. DSOMF ¶ 50. In other words, Plaintiff acknowledges that he lied when he indicated (on three separate occasions) that he had his college degree.

No reasonable jury could conclude that this evidence rebuts Defendant's legitimate reasons for referring Plaintiff to the Inspection Division. Plaintiff does not deny that either act occurred, rather he simply attempts to minimize his improper behavior. In addition, as discussed, Plaintiff made his initial overtime complaint in 2007, and filed his EEO complaint in 2008. While Plaintiff clearly believes otherwise, Defendant establishes that Plaintiff continued to work at the FBI. Plaintiff himself made multiple employees aware of his EEO matter, DSOMF ¶¶ 28-29, and employees, including Ward, participated in or were aware of a two-week EEO investigation in June 2010, *id.* ¶¶ 109-10. Yet, Ward did not refer Plaintiff to the Investigation Division until March 14, 2011, *id.* ¶ 19, approximately four years after Plaintiff's whistleblowing activity first occurred. And critically, Ward's reasons for the referral were well documented. As explained in Ward's Referral Memo, Ward referred Plaintiff to the Inspection Division after a long pattern of documented insubordinate behavior and misconduct. *See* Meyler Decl. Ex. 8. As to Plaintiff's multiple misstatements concerning his educational background, Plaintiff provides no authority that such improper conduct cannot form the basis of a dismissal. Thus, no reasonable jury could conclude that Plaintiff's evidence demonstrates that his EEO matter was the real reason for the referral. Summary judgment, therefore, is granted to Defendant as to this retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (D.E. 135) is **GRANTED** and this matter is **DISMISSED**. An appropriate Order accompanies this Opinion.

Dated: August 5, 2020

_____
John Michael Vazquez, U.S.D.J.